## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : **SEALED CRIMINAL** |
| | : **COMPLAINT** |
| -v- | : |
| | : Mag. No. 19-8058 |
| SAMORA PATTERSON | : |

I, Eliezer Rochttis, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Eliezer Rochttis, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
March 20, 2019 in Essex County, New Jersey

Hon. Leda Dunn Wettre
United States Magistrate Judge                Signature of Judicial Officer

## **ATTACHMENT A**

### **(Conspiracy to Transact in Criminal Proceeds)**

From at least as early as May 7, 2015, through on or about May 12, 2015, in the District of New Jersey and elsewhere, defendant,

### SAMORA PATTERSON,

did knowingly and intentionally conspire and agree with others to knowingly engage and attempt to engage in monetary transactions through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a) and (d).

In violation of Title 18, United States Code, Sections 1956(h) and 2.

## ATTACHMENT B

I, Eliezer Rochttis, am a Special Agent with the Federal Bureau of Investigation. I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known to the government concerning this matter. Where statements of others are set forth herein, these statements are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. At all times relevant to this complaint:

    a. Defendant Samora Patterson ("PATTERSON") resided in a home in Irvington, New Jersey (the "Irvington Residence").

    b. Defendant PATTERSON was the owner of Samora Construction, LLC, and Patterson Investment Group, LLC, both located in East Orange, New Jersey.

    c. Defendant PATTERSON maintained a bank account under the company name "Samora Construction, LLC" with Bank A (the "Samora Construction Account").

    d. Bank A was a financial institution as defined in Title 18, United States Code, Section 1956(c)(7).

    e. Real Estate Company A was a residential real estate company located in Hackettstown, New Jersey that owned the Irvington Residence.

    f. Title Company A was a title company located in the Tampa Bay area of Florida.

    g. Real Estate Companies B, C, and D were commercial real estate companies that owned properties located in Florida.

### The Wire Fraud Scheme

2. From at least as early as May 7, 2015, individuals known and unknown (the "hackers") engaged in a wire fraud scheme that caused over $2.3 million in loss to Title Company A.

3. In or about March 2015, Real Estate Companies B, C, and D

(collectively, the "Seller") entered into a multi-million dollar transaction to sell three commercial real estate properties (the "Transaction").

4. Title Company A was the closing agent for the Transaction.

5. The Transaction was scheduled to close on or about May 7, 2015. On or about that date, Title Company A was to wire approximately $2,367,233.20 in net closing proceeds from Title Company A to the Seller, in accordance with instructions the president of the Seller (the "President") was to provide to Title Company A.

6. Pursuant to the wire fraud scheme, the hackers compromised the email account of the President.

7. On or about May 6, 2015, the President emailed Title Company A with legitimate wire instructions.

8. On or about May 7, 2015, at 10:44 a.m., the President emailed Title Company A with revised legitimate wire instructions.

9. On or about May 7, 2015, at 11:32 a.m., using an email address that appeared similar to the President's email address, the hackers sent a fraudulent email to Title Company A with new wire instructions.

10. The new fraudulent wire instructions directed Title Company A to wire the $2,367,233.20 in net closing proceeds to the Samora Construction Account.

11. An employee of Title Company A responded to the email to confirm the change of instructions. Using an email address that appeared similar to the President's email address, the hackers responded to the employee of Title Company A and confirmed the new fraudulent wire instructions.

12. Title Company A's personnel, believing that the latest email messages were legitimate and from the President of the Seller, wired $2,367,233.20 from Title Company A's account to the Samora Construction Account.

## The Conspiracy to Transact in Criminal Proceeds

13. Defendant PATTERSON and other individuals known and unknown (the "Co-Conspirators") conspired and agreed to provide the hackers with defendant PATTERSON's bank account information in order to facilitate the hacker's directing of funds derived from criminal activity into the Samora Construction Account. The Co-Conspirators conspired and agreed that defendant PATTERSON would withdraw the funds derived from criminal activity from the Samora Construction Account. The goal of the conspiracy was to share in the illegal proceeds resulting from the wire fraud scheme described above.

14. Pursuant to the conspiracy, defendant PATTERSON provided bank account details for the Samora Construction Account to one of the Co-Conspirators, who in turn provided that information to the hackers.

15. On or about May 8, 2015, the day after the $2,367,233.20 in funds were misdirected by the hackers into the Samora Construction Account, defendant PATTERSON and a Co-Conspirator visited a branch of Bank A.

16. At Bank A, defendant PATTERSON withdrew $2,360,000, from the Samora Construction Account through four cashier's checks made payable to Patterson Investment Group LLC, in the amounts of $575,000, $585,000, $550,000, and $650,000.

17. Shortly thereafter, defendant PATTERSON visited a check cashing establishment and unsuccessfully attempted to cash the $650,000 cashier's check he had obtained from Bank A.

18. On or about later that day, defendant PATTERSON returned to the same branch of Bank A, deposited the cashier's check for $650,000 back into the Samora Construction Account, and withdrew two new cashier's checks made payable to Patterson Investment in the amounts of $200,000 and $150,000. Defendant PATTERSON also withdrew $10,000 in cash.

19. On or about May 11, 2015, defendant PATTERSON visited a different check-cashing establishment and successfully cashed the $150,000 cashier's check made payable to Patterson Investment that he had obtained from Bank A.

20. On or about the same day, defendant PATTERSON visited another branch of Bank A and withdrew $270,000 from the Samora Construction

3

Account via two cashier's checks, one for $100,000 made payable to Patterson Investment Group LLC, and another for $170,000 made payable to Real Estate Company A. Defendant PATTERSON also withdrew an additional $9,000 in cash.

21.     On or about the same day, May 11, 2015, defendant PATTERSON met with the owner of Real Estate Company A (the "Owner") and provided him with the cashier's check for $170,000 made payable to Real Estate Company A for the purchase of the Irvington Residence.